IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED

**Margaret Botkins**
**Clerk of Court**

8:48 am, 11/20/23

| | |
|---|---|
| AXTRA, LLC and THE AXIA-AXTRA TRUST, <br><br> Plaintiff, <br><br> VS. <br><br> AXIA ISSUER, INC., THE AXIA FOUNDATION, and BERKOWER LLC, <br><br> Defendant, | Case No.  22-CV-144-SWS |

ORDER GRANTING DEFENDANT BERKOWER'S MOTION FOR JUDGMENT ON THE PLEADINGS IN PART AND DISMISSING BERKOWER FROM THIS ACTION FOR LACK OF PERSONAL JURISDICTION

This matter comes before the Court on *Defendant Berkower LLC's Rule 12(c) Motion for Judgment on the Pleadings* (ECF No. 75). Given Axtra's concession that it does not assert any federal securities claims against Berkower, Berkower also requested that this Court reconsider its order on *Defendant Berkower LLC's Motion to Dismiss* (ECF No. 48). Having consider the briefs, reviewed the pleadings, and being otherwise fully informed, the Court GRANTS Berkower's Motion for Judgment on the Pleadings as to the RICO claims and DISMISSES Berkower from this action on the remaining common law claims.

1

## Factual Background

Several years ago, Defendant Axia and its affiliates developed a digital cryptocurrency called AXIA Coin ("AXC"). (ECF No. 35, ¶ 25.) Axia promoted AXC as a verified, reliable form of cryptocurrency because it was backed by a number of tangible assets. (*Id.* at ¶¶ 25, 27–28.) The initial AXC Founders pledged those assets to be held by the AXIA Foundation. (*Id.* at ¶ 28.) In exchange for pledging assets, Axia promised the Founders a certain amount of AXC and options to buy additional AXC. (*Id.* at ¶¶ 28, 58.)

Plaintiff Axtra[1] is one of these Founders. (*Id.* at ¶ 33.) Axtra and Axia formed the Axia-Axtra trust ("the Trust"), naming Axtra as the trustee. (*Id.*) Axtra members transferred assets into this Trust, and Axia stated that it would use the Trust to back AXC. (*Id.*) But Axtra alleges that it has not been compensated with the promised AXC and AXC options, and that it is a victim of Axia's fraudulent scheme designed to promote AXC without any intention to maintain AXC as a long-term, viable form of cryptocurrency. (*Id.* at ¶¶ 86, 94–99.) Axtra also alleges Axia admitted that it never intended to fairly compensate Axtra with the agreed upon AXC and AXC options.[2] (*Id.* at ¶ 29.) This lawsuit followed.

Axia hired Defendant Berkower, a New Jersey-based LLC, to investigate and verify that Axtra's assets were properly transferred to into the Trust. (*Id.* at ¶ 48.) Berkower conducted audits of Axtra's assets and confirmed the asset-backing existed in the "Axia

---

[1] For ease of reference, all Plaintiffs are referred to collectively as "Axtra" in this Order.

[2] Allegations against Axia are not relevant for purposes of this motion. For a more detailed review of the facts involving Axia's conduct, see this Court's prior order. (ECF No. 61).

Foundation Schedule of Investments and Independent Accountant's Report" ("the Report"). (ECF No. 35, at ¶¶ 30, 48). Berkower and Axia also required all Axtra asset owners to sign a document confirming that Axtra owned their assets ("the Confirmation"). (*Id.* at ¶ 67.) Berkower represented to Axtra that (1) the assets had been properly transferred and (2) that Axia had issued AXC and AXC options as agreed upon. (*Id.* at ¶ 48, 66.) Berkower published the Report[3] expanding on these conclusions. (*Id.* at ¶ 76.) But immediately preceding this lawsuit, Axia admitted it never issued AXC or AXC options "free and clear" to Axtra. (*Id.* at ¶ 48.) Axtra alleges that Berkower was privy to Axia's scheme and falsified the audit reports to further that scheme. (*Id.* at ¶ 77.)

Axtra brought eleven claims against both defendants. For purposes of resolving this motion, the Court will focus only on the six claims brought against Berkower.[4] Axtra alleged three claims—Counts Two, Three, and Four—against Berkower for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (ECF No. 35 at ¶¶ 115–157.) The RICO claims are based upon allegations that Berkower audited Axtra's

---

[3] Though Berkower points out that this report was not technically an audit, we will use this terminology to refer to the report and Berkower's role here, which Berkower has conceded is proper at this point in the litigation. (ECF No. 76, at 4 n.1.)

[4] The contract-based common law claims (Counts 7 and 8) are not asserted against Berkower. *See id.* at ¶¶ 164–176. Similarly, while Counts 10 and 11 reference "Defendants" as a whole, they appear to be directed at Axia and the Foundation alone, because they focus on Axtra's owed AXC and AXC stock. (*See id.* at ¶¶180–182, 184–185.) Consistent with the parties' briefing, we find that these claims are not brought against Berkower. (ECF No. 76, at 15–16; ECF No. 82, at 14.)
Axtra also claimed a federal securities law violation, which will briefly be discussed in the analysis section, as it is relevant to Berkower's Motion for Judgment on the Pleadings.

assets and published a detailed report focusing on the asset transfer into the trust. (*Id.* at ¶ 129.) That report "was designed to deceive" Axtra that the assets had been fully and properly transferred in a way that would trigger transfer of the AXC and AXC Options. (*Id.* at ¶ 129.) Axtra also claimed that all Defendants conspired to further the scheme against Axtra, in violation of RICO. (*Id.* at ¶ 157.)

Next, Axtra brought three common law claims against Berkower: (1) Count Five alleging Fraud; (2) Count Six alleging Fraud by Nondisclosure; and (3) Count Nine alleging Professional Negligence. (*Id.* at ¶¶ 158–160; 161–163; 177–178.) These claims all arose from the same factual basis as the RICO claims. Defendant Berkower moved for judgment on the pleadings on all claims, arguing that the allegations focus on Axia and that the complaint[5] does not adequately allege Berkower's role in any fraudulent activity. (ECF No. 75.)

## Legal Standard

The Federal Rules of Civil Procedure permit a party to move for judgment on the pleadings prior to trial. Fed. R. Civ. Pr. 12(c). "Judgment on the pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citations and quotations omitted). The Court accepts all well-pleaded factual allegations as true and views those facts in the light most favorable to the nonmoving party. *Nelson v. State Farm Mut. Auto.*

---

[5] In this Order, all references to the complaint refer to the First Amended Complaint.

*Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005) (citations and quotations omitted). For this Court to grant Berkower's motion for judgment on the pleadings, Berkower must "establish an absence of any issue of material fact and entitlement to judgment as a matter of law." *Landmark Am. Ins. Co. v. VO Remarketing Corp.*, 619 F. App'x 705, 708 (10th Cir. 2015) (citing *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012)).

## Analysis

### 1.   Attached Exhibits

Berkower asks this Court to consider two attached exhibits in ruling on its motion: (1) the Confirmation and (2) the Report. (ECF No. 76, at 4 & n.2.) Berkower submits these as proper exhibits for consideration at this stage because both were incorporated by reference in the complaint. *Id.* Axtra's initial objection was based only on Berkower's failure to file the exhibits with their motion, which appears to be a mistake on Berkower's part. (ECF No. 82, at 7; ECF No. 83, at 1 n.2.) And Axtra then submitted an exhibit of its own to support its assertions that Berkower was Axia's auditor. (ECF No. 85-1 at 1.)

When ruling on a Rule 12(c) motion for judgment on the pleadings, this court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1201 n.3 (10th Cir. 2016) (citation omitted). This includes consideration of a document not expressly attached to the complaint but referenced in the pleadings. *Woodie v. Berkshire Hathaway Homestate Ins. Co.*, 806 Fed. App'x 658, 665 (10th Cir. 2020) (unpublished) (citation omitted).

Axtra does not dispute the authenticity of either the Confirmations or the Report, attached as exhibits to Berkower's reply. (*See* ECF No. 83-1; ECF No. 83-2.) And Axtra referenced both documents in its Complaint. (ECF No. 35 at ¶ 66 (Confirmation); ECF No. 35 at ¶ 76 (Report).) Similarly, Berkower does not dispute the authenticity of the exhibit attached in Axtra's sur-reply, which includes signature pages for the Confirmation. (ECF No. 85-1.) Because these three exhibits were incorporated into the complaint by reference and no party disputes their authenticity, this Court will consider those exhibits for the purpose of deciding this motion.

### 2. Securities Claims

Defendants claim the pleadings do not show that Berkower had knowledge of Axia's alleged false statements or promises, or that Berkower intended to deceive Axtra. (ECF No. 76, at 8.) As such, Berkower asks this Court to grant judgment on the pleadings on the federal securities claims under 5 U.S.C. § 78j(b). Axtra conceded in its response brief that Berkower was not included in its federal securities claims, so this Court does not consider Count One in deciding Berkower's motion. (ECF No. 82, at 13.) But Axtra's concession is relevant to this Court's jurisdiction, discussed later in this Order.

### 3. RICO Claims

Axtra brings three RICO claims against Berkower: (1) a general violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) a RICO claim based upon 18 U.S.C. § 1962(c); and (3) a conspiracy to violate RICO based upon § 1962(d). Berkower claims Axia failed to allege Berkower engaged in a pattern of racketeering or

that Berkower knew about or joined the RICO conspiracy.[6] (ECF No. 76, at 12–14.) In response, Axtra claims that several paragraphs in the complaint show a pattern of racketeering. (ECF No. 82, at 15 (citing ECF No. 35, at ¶¶ 100–102, 112, 113, 125, 129.)) Axtra points to the fact that Berkower and Axia are listed as "global partners" on Axia's website and that, based on Axia's admissions of fraud, Berkower must have known when it published the Report that the information contained within it was false. (ECF No. 82, at 19–20.)

"To plead a valid RICO claim, a plaintiff must plausibly allege that a defendant (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Johnson v. Heath*, 56 F.4th 851, 858 (10th Cir. 2022) (citation and quotations omitted). To meet the pattern requirement, a defendant must have committed at least two racketeering acts within ten years of each other. 18 U.S.C. § 1961(5).

But determining whether alleged criminal activity creates a pattern under RICO "is no easy task." *Johnson*, 56 F.4th at 858. The predicate acts "may be small and they may occur close together in time" so long as the racketeering acts "include a specific threat of repetition extending indefinitely into the future." *Id.* The threat of long-term racketeering activity may also be shown by establishing that the racketeering acts "are part of an ongoing entity's regular way of doing business." *Id.* The Supreme Court has made clear that "a distinct threat of long-term racketeering activity, either implicit or explicit" will satisfy this

---

[6] Berkower submitted a motion to dismiss based Fed. R. Civ. Pr. 12(b)(2) and (b)(5). (ECF No. 48.) This Court denied the motion in its entirety. (ECF No. 61.) But Berkower is entitled to make arguments that would normally fall under a 12(b)(6) Motion to Dismiss in a 12(c) Motion for Judgment on the Pleadings. Fed. R. Civ. Pr. 12(h)(2)(B).

requirement. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989). Establishing the threat of continuity to show a pattern is a difficult showing to make. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).

Axtra has not alleged a pattern to sufficient plead its claim under RICO. Axtra points to the fact that Berkower and Axia are listed as global partners on Axia's website, but this alone cannot show the two conspired to engage in a pattern of behavior—especially considering that Berkower is just one of fourteen named global partners on Axia's website. *Global Contributors and Project Partners*, AXIA, https://axia.global/globalcontributors (last visited Nov. 14, 2023). And Axtra only posits the conclusory statement that "none of [the defendants] could accomplish their scheme without the timely assistance of others." (*Id.* at ¶ 125.)

Neither can the allegation that Berkower is Axia's auditor show that Berkower was engaged in a pattern of racketeering activity with Axia. (*See* ECF No. 85-1.) Axtra alleges Berkower engaged in two discrete activities. First, Berkower "performed a particularly extensive audit on the value, location, and ownership status of assets contributed by Axtra to the Axia project." (ECF No. 35 at ¶ 100.) Second, Berkower required Axtra confirm ownership of all assets transferred into the trust. (*Id.* at ¶ 66.) But the focus of Berkower's involvement in RICO is its auditing role and the preparation of the Report. (*See e.g., id.* at ¶ 129.)

Preparation of a single auditing report does not rise to the level of a pattern of racketeering activity. And even considering the Report and the Confirmations as two discrete acts, there is still no pattern. *Sedima v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)

("The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.' [RICO's] legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern.").

Finally, Axtra has not plead any allegations to show there is a threat of *continued* racketeering activity by Berkower. All allegations in the complaint focus on Berkower's role as an auditor for the one-time transfer of assets from Axtra Founders into the Trust. And while Axtra may not have received the AXC and AXC options promised, Axtra has not pleaded that Berkower will continue to somehow defraud Axtra in the future. Nor does Axtra plead that Berkower's role as Axia's accountant will lead to further similar racketeering activity. The complaint focuses on Berkower's role in a singular event: Axia's failure to transfer AXC and AXC options in exchange for Axtra's assets. Axtra's failure to allege a pattern of racketeering activity is fatal to its first two RICO claims. And because Axtra's substantive RICO claims fail, its § 1962(d) conspiracy claim also fails as a matter of law. *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) (citations omitted). Berkower's motion for judgment on the pleadings is granted as to Counts Two, Three, and Four

### 4. Remaining Common Law Claims

Counts Five and Six allege common law fraud and fraud by nondisclosure against all defendants. (ECF No. 35, at ¶ 158–163.) Axtra also asserts a claim of professional negligence against Berkower in Count Nine. (ECF No. 35, at ¶ 177.) But this Court does not have personal jurisdiction over Berkower for the remaining state law claims.

Earlier in litigation, Berkower filed a motion to dismiss this action under Rule 12(b)(2) and 12(b)(5). (ECF No. 48, at 1.) Notably, Berkower argued that this Court did not have general or specific jurisdiction over it. Berkower was not incorporated in Wyoming, it was not authorized to do business in Wyoming, and it had never conducted or solicited business in Wyoming. (ECF No. 49, at 6.) Axia—a corporation incorporated outside the United States—hired Berkower to prepare the Report for assets located outside of Wyoming. (ECF No. 49, at 7.) Axia and Axtra both countered that this Court had jurisdiction over Berkower because the federal RICO claims and the § 78(j)(b) claims allowed the Court to extend long-arm jurisdiction over Berkower. (ECF No. 56, at 11.)

Axtra argued that Berkower voluntarily valued a Wyoming corporation's assets. (ECF No. 56, at 14.) But otherwise, Axtra's response focused solely on Berkower's minimum contacts in the United States to qualify for federal long-arm jurisdiction. (*See e.g.*, ECF No. 56, at 16–17.) This Court agreed and denied Berkower's motion to dismiss, finding that federal long-arm jurisdiction existed to keep Berkower in the litigation in Wyoming. (ECF No. 61, at 24.) Though the Court did not find § 4(k)(2) jurisdiction over Berkower, it ruled that exercising jurisdiction over Berkower would not inconvenience the LLC at this stage in the litigation, and it was in the interest of judicial economy for Berkower to remain in the litigation. (ECF No. 61, at 23.) But the Court noted that "the extent of [Berkower's] contacts with the state [of Wyoming] is not entirely clear at this juncture." (ECF No. 61, at 23.)

Typically, a district court may not sua sponte dismiss a case for lack of personal jurisdiction, for a party may have impliedly waived this affirmative defense. *Williams v.*

*Life Sav. And Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) (per curiam); *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 92 n.4 (10th Cir. 2012) (unpublished). But in this case, Berkower previously requested this Court consider Berkower's contacts with the State of Wyoming and has now asked this Court to reconsider its earlier decision in light of Axtra's concession that it was not asserting a securities claim against Berkower. (ECF No. 83, at 4.) This presents a unique situation where the Court is not acting sua sponte to dismiss for lack of personal jurisdiction, but merely reconsidering a prior order. And "every order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1982) (citing Fed. R. Civ. Pr. 54(b)); *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (citation omitted). Axtra also had the opportunity to respond to Berkower's personal jurisdiction arguments in the motion to dismiss stage.

Given the above ruling granting judgment on the pleadings as to the RICO claims and Axtra's concession that it is not asserting any securities claims against Berkower, federal long-arm jurisdiction no longer exists. And without remaining federal claims, the uncertainty of Berkower's contacts with Wyoming—which the Court noted in its prior order—now becomes fatal to its claim.

Under *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945), a court's exercise of personal jurisdiction[7] over a corporation must be reasonable. There, the

---

[7] This analysis focuses on specific personal jurisdiction, because neither party has argued that Berkower is "at home" in Wyoming, which might subject it to general personal jurisdiction. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).

Supreme Court found that exercising personal jurisdiction over a corporation was reasonable where "the activities of the corporation [in the forum state] have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." *Id.* In other words, a "court may exercise personal jurisdiction over an out-of-state defendant who has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citing *International Shoe*, 326 U.S. at 316) (quotations omitted).

The only interaction Berkower has had with the state of Wyoming its valuation of a Wyoming LLC's assets. Indeed, Axtra has not argued any other minimum contacts. (*See generally* ECF No. 56.) And Berkower did not value Axtra's assets after Axtra's solicitation (which would suggest that Berkower solicited business with Wyoming corporations). Rather Berkower valued Axtra's assets as a result of its ongoing business with Axia—an international corporation. There is no evidence Berkower was even aware that Axtra was a Wyoming entity. *See Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 975–76 (10th Cir. 2022) (finding no personal jurisdiction when defendants were unaware their actions involved Wyoming business connections). In fact, Axtra has not alleged that Berkower has ever had any meaningful business activities with Wyoming. *See id.* at 976. The only link Berkower has with Wyoming is that Axtra was a company incorporated in Wyoming, which is too tenuous to justify personal jurisdiction in this state. *See Pine Tree Cap., LLC v. BOKF, N.A.*, No. 20-8058, 2021 WL 4521352, at *2 (10th Cir. Oct. 4, 2021)

("Rather, the only link between Defendants' conduct and Wyoming is the fact that Plaintiff entities are incorporated, organized, or have assets in Wyoming."). Berkower does not have the required minimum contacts with the state of Wyoming, and exercising jurisdiction over Berkower for three Wyoming common law claims would "offend traditional notions of fair play and substantial justice." *BNSF Ry. Co.*, 581 U.S. at 413.

### 5. Axtra's Request to Amend

In a footnote to its response brief, Axtra requests leave to amend its complaint "[s]hould the Court disagree with [Axtra's] arguments" in the response. (ECF No. 82, at 1 n.1). The Federal Rules of Civil Procedure instruct courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. Pr. 15(a)(2). But this instruction has limitations. "[A] court need not grant leave to amend when a party fails to file a formal motion." *Albers v. Bd. Of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) (citation and quotations omitted). And "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." *Id.* (citation omitted).

Axtra stated only that it would amend its complaint as to Berkower, but gave no more specific information on the contents of its amendments. (ECF No. 82, at 1 n.1.) This request, contained in a footnote, is insufficient to notify the Court and other parties of the grounds for amendment. *Albers*, 771 F.3d at 706; *see also Johnson v. Spencer*, 960 F.3d 680, 721 (10th Cir. 2020) (such drive-by requests to amend the complaint do not rise to the status of a motion to amend). Further, Axtra has been on notice of its potential personal jurisdiction issue since Berkower submitted its original motion to dismiss and this Court

13

noted that Berkower's contacts with Wyoming were "not entirely clear." (ECF No. 61, at 23; ECF No. 49, at 7.) Axtra was also aware that this Court's prior ruling, that it could exercise jurisdiction over Berkower, was based exclusively on federal securities law, yet Axtra conceded in its response that it was not asserting a securities fraud claim against Berkower. (ECF No. 82, at 15.) Furthermore, Axtra made no effort to amend or expand on the jurisdictional issue in its request for an amendment.

Similarly, Axtra did not offer any specifics on how it would amend the RICO claim in response to Berkower's motion for judgment on the pleadings. Axtra's request to amend its complaint, to the extent viable, is denied.

## **Conclusion**

Axtra has not sufficiently alleged that Berkower engaged in a pattern of racketeering activity or that Berkower's conduct gives rise to a threat of continued racketeering activity. At best, Axtra merely alleged Berkower published the Report and required Confirmations from Axtra. This is not sufficient to meet RICO's requirements and so judgment on the pleadings is appropriate.

Berkower also requested judgment on the pleadings for three common-law claims. Because there are no remaining federal law claims against Berkower, and Berkower does not have sufficient minimum contacts with the state of Wyoming, this Court may not exercise jurisdiction over Berkower on the remaining claims. Upon re-consideration of its earlier ruling on Berkower's motion to dismiss, the Court finds that Berkower should succeed on its Rule 12(b)(2) motion.

IT IS THEREFORE ORDERED that *Defendant Berkower LLC's Rule 12(c) Motion for Judgment on the Pleadings* (ECF No. 75) is GRANTED as to Counts 2, 3, and 4 of the First Amended Complaint (ECF No. 35).

IT IS FURTHER ORDERED that *Defendant Berkower LLC's Motion to Dismiss* (ECF No. 48) based upon a lack of personal jurisdiction, should be GRANTED on all remaining claims against Berkower, without prejudice.

Dated this 17th day of November, 2023.

Scott W. Skavdahl
United States District Judge